Case number 18-1125 at L. Long Beach Memorial Medical Center, dba MemorialCare Long Beach Medical Center & MemorialCare Miller Children's and Women's Hospital Long Beach Petitioner v. National Labor Relations Board. Mr. Abrams for the petitioner, Mr. Cantor for the respondent, and Mr. Burrell for the intervener. Good morning, your honors. May it please the court, Adam Abrams of Epstein Becker Green for Petitioner Long Beach Memorial Medical Center, Inc. This morning, I don't want to talk to you about a case regarding an employer ban on union insignia, because that's not what we have here, and I don't believe that's the question that we're asking the court to decide. Quite frankly, what we're asking the court to decide is simply, does a hospital have a right to require patient care employees to wear specific identification badges and affix them wearing a branded uniform reel? And in determining that question, does the NLRB have to apply its own applicable standards and precedent? We believe the answer to both of those questions is yes. Accordingly, the petitioner respectfully requests this court grant the petition, vacate the board's decision, and remand the matter to the board to apply the applicable standard as announced in the Boeing Company decision. There is no dispute here that the rules in question are facially neutral. There also should be no dispute that the applicable standard for facially neutral rules is the Boeing case. Yet the board did not address the standard or attempt to distinguish it. It simply ignored it. As this court has found, silence in the face of inconvenient precedent is not acceptable, and if an agency glosses over or swerves from prior precedent without discussion, it may cross the line from intolerably terse to the intolerably mute. What is it about Boeing that the board was supposed to follow in this case? The fact that the reasonably construed standard was overruled in interpreting the facially neutral policy or work rule? Is that the argument that you're making? That's correct. The Lutheran Heritage facially neutral rule of reasonably construed was overturned and completely upended and replaced with a new standard which required a balancing, not just looking at whether a rule could possibly interfere with protected activity, but balancing that specifically against what the legitimate interests were. That balancing effort did not take place in this case. It wasn't even acknowledged. If that's so important, why didn't you file a motion for reconsideration raising that ground? Well, we don't believe that it is the petitioner's responsibility to ask for reconsideration. One should expect that the board is going to apply its own rule. They issued a decision. Nothing changed between the time in which they issued the decision and the time of the appeal. The Boeing case happened four months before they issued their decision. There is really no grounds under the agency's own rule for reconsideration. Nothing extraordinary happened. While we're saying that the board failed to apply its own precedent and they got the law wrong and misapplied the facts, that's not extraordinary grounds for reconsideration. Every appellant in every case believes that. We believe that we needed to come here before this court and ask this court to remand and require them to apply the appropriate precedent. Why didn't you just rewrite the rules? Why didn't we just rewrite the rules? Rewrite the rules. That's an excellent question. I think it actually begs the question as to why Boeing was decided the way it was. Because employers were, under the prior regime, under the Lutheran Heritage Standard, being forced to go back and forth and write rules and guess what was going to pass muster and try to get linguistical precision in an area in which it is very difficult to do. An employer should not be required to do that. This case is simply about can an employer set its uniform standard, especially when it has a patient care process. Going back and rewriting the rules and finding whether or not somebody or the union or an individual employee or the board is going to find it acceptable, not knowing what standard they're going to apply, is asking an employer to shoot in the dark. It is not what should be required. What should have been required in this case is that the board should have recognized that Boeing fundamentally changed the landscape. And that the presumptions that the board and the union rely on are now stale and incorrect. The patient care versus non-patient care, the rules being constrained. Let me ask you about the reel thing. It says that the only reels that are allowed are ones that have a logo approved by the hospital. Is that right? That's correct. Suppose it doesn't have a logo. There is only, with the record evidence and the facts that were presented at hearing, not only was the rule such that only the reel that was provided, the uniform reel that was provided by the employer was acceptable. The rule says it says a logo approved by the hospital. Suppose the union, the union must have bought a bunch of these reels and had union logos on them. But suppose they hand it to the hospital and say, please approve this. There is no approval process. And that's why the factual discussion under Boeing is required, but looking at actually what employees understood. They understood this was their uniform badge reel. Is exhibit 23 in the joint appendix a reel or is that just a pin? On page 496. It's not a reel. Well, the heart in that, that appears to be a reel. Yeah, I thought it was a reel, but it doesn't have any logo on it. That's not approved. That was put in there to show that people, there was a disparate enforcement allegation that was dismissed. It's not before you. There was an allegation that there was some disparate enforcement of the rule. That's not an approval. So the way you interpret the rule is that the reel has to have a logo and the logo has to be one of the, designating the hospital. What the evidence showed was that the way the employees understood the rule and the way it was communicated was that the only reel was the uniform one that was provided to them by their supervisor. And when we're thinking about this, this is really, does the union have the right to replace a uniform item? Right? If we walked into any fast food restaurant, a Taco Bell or something else, and you saw somebody who had a Taco Bell hat, right? Because the employer said, wear the Taco Bell hat. Does the union have the right to say, no, we're going to replace that uniform item with one of our own? That's what took place here. Are there any, I didn't see any union reels here. Well, they're hard to identify because they actually say that there were some exhibits that did describe union reels. They are about the same size. There's no dispute about that. There's nothing, they do have an EKG monitor type thing that could raise the awareness, I guess, of potential heart failure. But that wasn't the issue. The issue was this is a uniform standard. And if a fast food restaurant has the ability to tell somebody what uniform to wear, or as in the W case, a hotel gets to say, we want to present a certain image. When we have evidence-based, healthcare-based reasons. So I just want to be clear about the interpretation. Nurses and other people who deal directly with the patients have a particular uniform they have to wear and a place to hold the ID badge. That's correct. They're specially designed. But they have the option of using a reel instead of putting the badge in the garment. What about all the other people who don't deal? The people working in the cafeteria or the people who clean or so on and so forth. They need ID badges too. The reel rule did not apply to them. It only applies to direct patient care providers in patient care areas. That's what the evidence was. And that's actually right on the policy itself. The rule didn't say only in patient care areas, right? The rule, well, it did not write in that one sentence. And the board focuses on the one sentence, but the entirety of these two policies together with the entirety of all of the policies and how they were rolled up is how a reasonable employee understood them. All the testimony was that they did, in fact, understand that. In fact, a union steward testified that she would regularly wear the reel in the patient care area, and then she would replace it with a union reel when she left the patient care area with no questions from the employer and no. That seems to me utterly absurd. It's cumbersome. That's what she did. But there's no dispute. The government does not argue that the employer didn't have the right to do it in the patient care area. Respectfully, I would reserve some time unless there's a question. All right. Thank you. We'll hear from the respondent. May it please the court, Jared Cantor on behalf of the National Labor Relations Board. Your Honors, if I can reset the perspective that the company or Long Beach is pressing here. In this case, the board applied, it's established, court-approved jurisprudence that specifically governs restrictions on union insignia in the health care setting. In applying that, based on substantial evidence, the board reasonably found the violation because both of these rules were presumptively valid. And as we argue extensively in our brief, the company or Long Beach. You mean presumptively invalid. Presumptively invalid. Yes, Your Honor. They are presumptively invalid because as written on their face, they don't clarify that their restriction is, applies only in immediate patient care areas. Well, why not accept the hospital's narrowing interpretation? Say, fine, if that's what you mean, and you're not going to, we'll put it in an order, you won't enforce it beyond the people that are dealing directly with patients. And the PIN rule will not be enforced other than putting PINs on an ID badge. Why not accept that? Well, I mean, Your Honor. Let's suppose, let me put it this way. If this were, if instead of the hospital, this were an administrative agency promulgating these two rules, would you defer to the interpretation given to the rules by the people who wrote them? Well, Your Honor, that's not the board's jurisprudence in this area. The board reads the rule as written, and we cite to all of those cases. And interestingly, Long Beach cites everybody. Everybody reads the rule as written. Yes, Your Honor. But the difference is the company, Long Beach is claiming that this is a Boeing case because this was a Lutheran Heritage case. And that fundamentally confuses or is attempting to confuse separate board jurisprudence. This is not a facially neutral rule. Lutheran Heritage is reasonably construed, dealt with facially neutral rules. There's plenty of room for interpretation here. Take the PIN rule, okay? Yes, Your Honor. It says only approved PINs, badges, and what is the other? Professional certifications, maybe. How do you wear a professional certification? Well, Your Honor, the professional certification are these PINs, too. It's a PIN. Yes. So that's redundant. Well, the PINs are, as the evidence shows, the PINs are the hospital-issued PINs because, again, there is, in fact, no approval process here. The only PINs that employees are allowed to wear are the hospital-issued PINs. Hospital-approved PINs. Yes, but as counsel just admitted and as the evidence shows, there is, in fact, no approval process. It's just what they hand out. But to circle back again, the point being that we make in our brief, Long Beach's arguments regarding Boeing are jurisdictionally barred. They could have and should have either before the board issued its decision raised these arguments or afterwards through a motion for reconsideration, and that would have given the board the statutorily recognized purpose of TENE, which is to give the board an opportunity to respond and to address these arguments. And so all of their arguments, then, are really misplaced. And it's not until their reply brief that they then argue futility. And they don't actually cite this court's jurisprudence on futility. They cite this Fifth Circuit's decision. But what this court has said in HTH, as well as W&M Properties, is that futility with regards to a motion for reconsideration is where the agency has previously rejected the very argument that they're pressing. The board has not yet rejected this argument that Boeing changed its entire jurisprudence. Our brief, I submit, concretely shows that it does not. But as a principled matter, they should have raised that argument for the board, because then the board could have provided the answer that they're seeking. And again, as we show in our brief, the board would have said, no, it is not. And our decision in this case, as we show in our brief, does not rely on that. And I want to make one more point, because it's also in their reply brief, and so we have not had a chance to respond to it. They argue in their reply brief that they were precluded from admitting evidence supporting their business justifications for these rules. And first of all, that was not in their opening brief, so the standard appellate rule applies that that's waived. They cite in support of that argument a joint appendix, page 637, where they said that they made this argument to the board, and they're citing Exception 3. And in fact, the Exception 3 of JA 637 says nothing about the ALJ improperly excluding evidence, so that argument would also be barred by 10E. And then to the substance of it, they cite transcript pages 220 and 222, where they said that their counsel was discouraged from asking relevant questions. And the question that he was asking about was visitor badges, which are not at issue here. And the exhibit that they say was improperly excluded was an exhibit, a study. And the study, the testimony shows why they were trying to introduce that exhibit was why they got rid of lanyards. Again, not at issue here. So I did want to address that, because this is our only time to address that point. And if I could just circle around to one other point that Judge Randolph touched on. They could rewrite these rules and narrowly tailor them. We're in a world here in the healthcare facility where employers already, if you will, get a thumb on the scale, because they can issue rules that restrict employees' rights to wear insignia. And if those rules are restricted to immediate patient care areas, those rules that are interfering with an employee's statutory right are already presumptively lawful. The question in this case is where are these rules? So if they rewrote the rule, let's take the real rule, and it applied on its face only to individuals who have direct patient contact, would that be a valid rule? No, Your Honor, because the to get the benefit of the presumption, they would have to make clear that that rule applies only in immediate patient care areas. That's what I just said. Oh, I thought you said only to immediate care providers. Well, and while they're providing. Yes. So it would be valid, then? It would be presumptively valid, Your Honor. Well, what does that mean? Well, because then the burden would come back to the general counsel, for instance, to show that despite the fact, and this would be to show that despite. What could overcome the presumption? It's the St. John's case that was discussed in this Court's decision in Healthbridge, where even if it's presumptively valid, one way that it can be overcome is if they have allowed some insignia, but not others. Essentially a discriminatory application. Suppose there's no such evidence. Well, then the rule could have potentially been presumptively lawful, and that would have been the end of the case. And what about the I.D. rule, if it only applied to putting stuff on the I.D., like pins on the I.D.? Well, that's a board footnote, too, Your Honor, where the board said it's not passing on that. If the rule was rewritten to say that, that's essentially left for another day, if it was so narrowed down. Is that presumptively valid? Well, no, Your Honor. The question would then be, does it apply, again, in immediate care areas or not? And so that's the fault with both of these rules, is that on their face they restrict an employee's right, and then the second question is they fail to make the legally significant... How do you write a rule that only applies for an I.D.? Everybody has to have an I.D. in the hospital, I assume. And what would you write? You'd write a rule and say the pins on your I.D. have to be approved by the hospital when you're dealing with direct patients. Well, but otherwise you can take the pins off when you walk out of the room into the corridor and put union pins on them. It makes no sense at all. Well, Your Honor, there's two points. One, they could write the rule to make clear that employees can wear union insignia pins at all times, and so that would be the end of it, or if they want to avail themselves of the presumption of validity, they could rewrite the rule to make clear that when in immediate patient care areas, no union insignia pin, or rewrite it to say you can only wear hospital-approved pins, or you must wear hospital-approved pins, and yada, yada, yada, this restriction only applies when you're in an immediate care area. And as to Your Honor's point, I mean, we argue in our brief that the board law recognizes that the fact that employees have to take an item on or off does not mean that that burden then says, well, they should just not have the right to wear it at all because it's inconvenient to them. That still carves out a sliver of time where they can exercise the statutorily recognized right. The board rests on its brief, Your Honor. Thank you. All right, we'll hear from Intervenor, if he cares to argue. May it please the Court. Good morning, Your Honors. My name is Micah Barule, Counsel for California Nurses Association, National Nurses United, here on behalf of Intervenor. I'd like to just start by addressing something that Mr. Abrams said on behalf of Petitioner, that there was no grounds for filing a motion for reconsideration because this was not extraordinary not to apply Boeing. I find that to be an incredible argument when that is the thrust of Petitioner's position in this case. They had every opportunity, if they felt that the board had misapplied doctrine here, to make a motion for reconsideration. I have done such motions in the past. My union has several times, and they certainly were free to do so, and they did not. As such, they are jurisdictionally barred under 10E. And in any event, the board clearly applied the proper doctrine in union insignia cases, where there is the balancing that Mr. Abrams is talking about under Boeing. The balancing is such where the special circumstances test balances the right to wear union insignia versus an employer's asserted justifications for restrictions on that right. The board found that the rules at issue were on their face unlawful, and it looked at the hospital's arguments for special circumstances and rightly rejected them as not overcoming the right to wear the union insignia. So the long and short of it is it doesn't make a difference. The balancing that Mr. Abrams is asking for was done. And really what Boeing did was extend such balancing of employee rights against asserted employer business justifications to certain employer role cases concerning rules that an employee could reasonably construe to prohibit Section 7 activity, facially neutral rules, which the board clearly held these were not. Based on substantial evidence, these were unlawful on their face. And I should just note that Boeing did not touch upon areas of board law where such balancing is already employed, such as solicitation, distribution, and here, as with union insignia. Moreover, Petitioner is barred from raising extraordinary circumstances at this point and raising it for the first time in its reply brief. Thank you. Thank you. All right. Did Petitioner have any time remaining? All right. I'll give you two minutes. Thank you, Your Honor. Just to be clear, the procedural arguments here really attempt to, and jurisdictional ones, flip this case on its head and ignore the procedural background. The employer won below. So the idea that there should have been things listed in the exceptions is extraordinary. They won. The union and the counsel for the general counsel appealed to the board. So there would be no reason for us to preserve any rights. Once the actual board decision came out, again, there was no changed circumstances that would have prompted any action from the employer. But I want to address this idea that the special circumstances test applies the Boeing standard. It simply does not. Boeing completely changed the landscape. It flipped the way that we look at all rules cases. Any rules case should go under Boeing. There is no carve-out, as counsel for the union suggests, for insignia cases. The special circumstances is not balancing one right versus the other. It's whether and seeing the level of infringement. It takes, as counsel for the board has admitted, the rule itself and says, if this rule has any impact, then you have to prove special circumstances. It's not balancing those things against one another, which is important here, especially in light of the fact that the infringement is very slight. All it's saying is, on this one area of the uniform, you have to wear what we are telling you to wear, the memorial care badge. On your pins, when you're identifying yourself, you can only say your professional certifications. But if you want to wear union insignia, the evidence shows these nurses can and do regularly wear union insignia in various places. They can wear it in their jewelry. They can wear it in their hair. They can wear it on their stethoscopes. They can wear it anywhere. They're routinely doing it in patient cares and outside of patient cares. There is no compelling reason to force an employer to limit its or change its uniform and inhibit it from doing what it thinks is necessary for patient care. All right. Thank you. We have your order. We'll take the matter under advice.
judges: Wilkins, Ginsburg, Randolph